FILED
SEP 2 5 2001
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

ENTERED
SEP 2 5 2001

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, a mutual company incorporated in the state of Michigan, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO.: CV-00-PT-1234-M ) |
| COOSA KARS COMPANY, INC., | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This cause comes to be heard upon plaintiff Auto-Owners Insurance Company's ("Auto-Owners") Motion for Summary Judgment, filed August 17, 2001, and defendant Coosa Kars Company's ("Coosa Kars") Motion for Summary Judgment filed September 5, 2001.

**FACTS**

Auto-Owners is a mutual insurance company incorporated and organized under the laws of the state of Michigan, having its principal place of business in the state of Michigan. Coosa Kars is a corporation incorporated and organized under the laws of the state of Alabama, having its principal place of business in the state of Alabama.

Auto-Owners issued a garage liability policy to Coosa Kars. The policy term commenced on June 6, 1996, and terminated on June 6, 1997. The policy included a dealer's blanket policy, an amendatory endorsement to the dealer's blanket policy, and a false pretense endorsement.

Coosa Kars president, director, and chief executive officer is James M. Character ("Character"). Character employed Evan Edge ("Edge") to manage Coosa Kars. Coosa Kars

26

filed a "Automobile Loss Notice" with Auto-Owners on June 24, 1998. In the section entitled "Description of Accident," Coosa Kars provided "Employee Fraud" and that "Evan K. Edge signed documents related to sale of auto - without paying off the banks liens on those auto's."

Coosa Kars requested that Auto-Owners pay its claim under the garage liability policy's dealer's blanket policy and the false pretense endorsement. Auto-Owners denied coverage. Auto-Owners subsequently filed a Complaint in this court seeking a declaratory judgment that it does not have a duty to provide coverage to Coosa Kars under the garage liability coverage, dealer's blanket policy, or the false pretense endorsement. Coosa Kars filed a Amended Answer and Counterclaim claiming that Auto-Owners' denial of coverage constituted a breach of contract and bad faith denial of a valid claim.

## ARGUMENT

Auto-Owners argues that it is entitled to summary judgment as a matter of law because the garage liability policy does not provide coverage for any losses sustained by Coosa Kars due to the alleged mismanagement of the dealership's funds by Edge. Auto-Owners contends that the language of the garage liability policy clearly and unambiguously dictates a declaratory judgment from this court declaring that it has no duty to provide coverage for the losses claimed by Coosa Kars.

Auto-Owners first asserts that there is no coverage under the "Garage Liability Policy." Section I entitled "Insuring Agreements" provides that in the event of "Bodily Injury Liability" or "Property Damage Liability," Auto-Owners agrees

> "[t]o pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed under any contract as defined herein, for damages because of
> A. bodily injury, sickness or disease including death at any time resulting therefrom, or

2

>   **B.** injury to or destruction of tangible property, including loss of use thereof, neither expected nor intended from the standpoint of the insured and arising out of the hazards defined in Section II of the policy.

Auto-Owners argues that there is no coverage under this provision because there have been no liability claims asserted against Coosa Kars.

Next, Auto-Owners contends that there is not coverage under the "Dealer's Blanket Policy." Auto-Owners explains that the dealer's blanket policy in question contained an amendatory endorsement. The terms of the amendatory endorsement read as follows:

>   **I      VEHICLE DAMAGE COVERAGES**
>   The Company will pay for direct and accidental loss or damage to the automobile under one or more of the following coverages for which a premium is shown in the Declarations:
>   **COVERAGES**
>   (1)     **Named Perils** - loss or damage caused by:
>   . . . .
>            (d)     theft, larceny, robbery and pilferage;
>   (2)     **Comprehensive** - loss or damage from any cause except upset or collision or impact with another object or with a vehicle to which it is attached.

The term "automobile" is defined to "mean any type of land motor vehicle, utility trailer, camping trailer, vacation trailer, mobile home, camper body, truck-trailer or semi-trailer . . . ." The term also includes "equipment permanently installed in or on the vehicles." Furthermore, the "Exclusions" section of the endorsement states that the policy does not cover "loss suffered by the insured in case he voluntarily parts with title to, possession or custody of any automobile at risk hereunder, if induced so to do by any fraudulent scheme, device or false pretense . . . ." In light of these provisions, Auto-Owners argues that there is no coverage because there has been no theft, damage, pilferage of any automobiles owned by Coosa Kars.

Finally, Auto-Owners asserts that there is no coverage under the "False Pretense Endorsement" to the garage liability policy. Auto-Owners notes that there are no Alabama cases

3

construing the "false pretense endorsement" under analogous facts. However, it contends that there is no coverage based on the clear and unambiguous language of the endorsement.[1] The endorsement provides that Auto-Owners "will pay for loss or damage to the automobile that results from . . . the insured's voluntarily parting with the automobile if induced to do so by any fraudulent scheme, trick, device or false pretense . . . ." Auto-Owners claims that there is no coverage under this provision because there has been no loss or damage to an automobile sold by Coosa Kars. Auto-Owners asserts that any loss that Coosa Kars sustained arose due to Edge's failure to pay-off liens on trade-ins received by customers. Auto-Owners claims that this scenario simply does not fit the coverage form because there was no "loss or damage to the automobile" owned by the dealership.[2]

In response, Coosa Kars argues that it is entitled to summary judgment as a matter of law because the "Dealer's Blanket Policy" and the "False Pretense Endorsement" provide coverage for the losses it sustained due to Edge's alleged fraudulent conduct. Consequently, Coosa Kars asserts that Auto-Owners breached its contract and that is also liable for its bad faith failure to settle Coosa Kars' valid claim.

According to Coosa Kars, there is coverage under the "Dealer's Blanket Policy" because it provides coverage for losses due to "theft, larceny, robbery, and pilferage" and "loss or damage to the automobile . . . for which the insured is legally liable." In addition, it argues that

---

[1] Auto-Owners states that the endorsement form "is an ISO form used by the insurance industry." It claims that the endorsement is "used to protect automobile dealers who are exposed to a theft loss by swindle, such as where a customer purchases an automobile and obtains possession of it by giving a check for the purchase price which is later dishonored." *Citing Commercial Auto Insurance*, International Risk Management Institute, Section XIII.K.2 (1993).

[2] Auto-Owners notes that Coosa Kars could have purchased employee dishonesty coverage to cover such occurrences.

4

there is coverage under the "False Pretense Endorsement" because it includes "loss or damage to [an] automobile that results from . . . the insured's voluntarily parting with [an] automobile if induced to do so by any fraudulent scheme, trick, device or false pretense . . . ." According to Coosa Kars, its former employee, Edge, "habitually" engaged in business practices that often proceeded as per the following example:

> Buyer purchases a $20,000.00 car from the defendant's dealership. Bank A finances $22,000.00 for Buyer, paying $20,000.00 to the defendant's dealership. Buyer traded to the defendant's dealership a vehicle financed through Credit Union, on which a $5,000.00 balance is still owed. The defendant's dealership now has the trade-in vehicle and the $20,000.00 purchase price for the car it sold. The dealership now has a duty to pay off the outstanding indebtedness to Credit Union on the trade-in.
>
> The dealership has its vehicle "floor planned" through Bank B, and owes $18,000.00 via the floor plan on the car sold to Buyer for $20,000.00. When the $20,000.00 is received from Bank A, $18,000.00 should be paid to Bank B in order get the sold vehicle released from the floor plan. In actuality, the dealership (Edge) would not pay Bank B (the Bank with the floor plan loan), he would not pay off the debt to Credit Union on the "trade in" vehicle, and the Buyer, Bank A, Bank B and Credit Union would all have been "hoodwinked."[3]

Due to Edge's alleged business practices, Coosa Kars' states that it has incurred over $700,000.00 in expenses in its effort to cure this problem. Coosa Kars claims that these losses are covered because Edge's conduct involved, at the very least, a "fraudulent scheme, trick, device or false pretense." Coosa Kars contends that the terms clearly and unambiguously dictate that the insurance policy provides coverage. However, it notes that if any ambiguities do exist, they must be construed against the author of the contract, Auto-Owners. *Citing Home Indem. v. Employers Nat. Ins. Corp.*, 564 So. 2d 945 (1990).

---

[3] Bank B and the Credit Union would not have been "hoodwinked." They were just not paid. Arguably, Bank A and the Buyer may have been "hoodwinked."

5

## ANALYSIS

Summary judgment may be granted based upon facts developed during the pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Id.* The non-moving party then bears the burden of showing that there are specific facts demonstrating that there is a genuine issue of fact for trial. *Id.* at 324. "When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). The trial court must resolve all reasonable doubts in favor of the non-moving party, but need not resolve all doubts in a similar fashion. *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

This court must apply the substantive law of Alabama in this diversity case, unless federal constitutional or statutory law requires a contrary result. *See Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771 (11th Cir. 2000) (citing *Salve Regina College v. Russell*, 499 U.S. 225, 226 (1991)). To determine the law of Alabama, this court must follow the decisions of the Alabama Supreme Court, and in the absence of such decisions on an issue, must adhere to the decisions of the Alabama appellate courts unless there is some "persuasive indication that the state's highest court would decide the issue otherwise." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982). Furthermore, "[o]nly where no state court has decided the point in issue may a federal court make an educated guess as to how that state's supreme court would rule." *Benante*

v. *Allstate Ins. Co.*, 477 F.2d 553, 554 (5th Cir. 1973). In making this "educated guess," federal courts can consider all resources available, "including decisions of other states, . . . and federal decisions, and the general weight and trend of authority." *Farmers Alliance Mut. Ins. Co. v. Bakke*, 619 F.2d 885, 888 (10th Cir. 1980).

The Alabama appellate courts have not directly addressed the issue presented. This court must turn to general decisions of Alabama courts involving interpretation of insurance policies, as well as relevant decisions from other jurisdiction and common sense to make an "educated guess" as to how the Alabama Supreme Court would rule on this issue. The Alabama Supreme Court has provided the following guidance. The insurance policy is a contract that is to be "construed liberally in favor of the insured and strictly against the insurer." *Allstate Ins. Co. v. Skelton*, 675 So. 2d 377, 379 (Ala. 1996). When interpreting an insurance policy, it must be read as a whole. *Allstate Ins. Co. v. Hardnett*, 763 So. 2d 963, 965 (Ala. 2000). The policy provision in question cannot be read in isolation, but, instead, must be read in context with the other provisions. *Id.* If the court determines that the policy provision is ambiguous, then the provision "will be construed most strongly against the insurer and in favor of the insured." *Tyler v. Ins. Co. of N. Am.*, 331 So. 2d 641, 644 (Ala. 1976). However, if the provision in question is unambiguous, "then a court must enforce the policy as written and cannot defeat express provisions, including exclusions from coverage." *Auto-Owners Ins. Co. v. American Cent. Ins. Co.*, 739 So. 2d 1078, 1081 (Ala. 1999). The question as to whether a term is ambiguous is a question of law and is to be decided by the trial court. *Id.*

When a court is interpreting exclusionary provisions in a policy, which this court has been asked to do, it is to interpret them as narrowly as possible, "so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company

which drafted and issued the policy." *Skelton*, 675 So. 2d at 379. However, the "language in an exclusionary provision in a policy of insurance should be given the same meaning 'that a person of ordinary intelligence would reasonably give it.'" *Auto-Owners*, 739 So. 2d at 1081 (citation omitted). Consequently, "where no ambiguity exists, the contract will be enforced as written." *Cook v. Aetna Ins. Co.*, 661 So. 2d 1169, 1170 (Ala. 1995).

## CONCLUSIONS OF THE COURT

The alleged losses claimed by the defendant clearly did not result from the "theft, larceny, robbery or pilferage" of any automobiles or parts. There is no allegation that Edge took any automobiles or parts, nor that he converted any automobiles or parts to his own use. There is no allegation that either Edge or any other person damaged any automobiles or automobile parts.

It is further clear that the properties insured under the subject policy are "automobiles," as defined, not cash or other intangible properties. The only remotely arguable coverage to the defendant would have to come under the False Pretense Endorsement. Again, however, there has been no alleged "loss or damage" to any automobile. There has been no allegation that the defendant was "induced" to parting with the automobile because of any fraudulent scheme, trick, device or false pretense. The essence of the allegations is that the defendant received funds which it did not properly distribute to others. Defendant itself simply argues that the defendant suffered "financial losses as a result of Evan Edge's fraudulent conduct. . . ."

It is not entirely clear whether the defendant is alleging that Edge embezzled the funds which should have been paid out or whether the defendant simply retained those funds.[4] Either

---

[4] The defendant has not alleged whether *it* was deprived of the funds which were not distributed. It should be remembered that the party in interest is Coosa Kars Company, Inc., the insured, not James Character.

way, there is no coverage. The clear language of the policies dictate to the contrary. Ambiguities do not result from just a "need to" premise. *See Robertson v. Fowler*, 475 S.E.2d 116 (W. Va. 1996) *and Bjorkland v. Aetna Cas. and Sur. Co.*, 306 N.W.2d 838 (Minn. 1981).

The court will grant the plaintiff's motion for summary judgment and deny the defendant's motion for summary judgment.

This 25th day of September 2001.

                                                ROBERT B. PROPST
                                SENIOR UNITED STATES DISTRICT COURT JUDGE